Points Decided.

(January 15, 1908.)

## ANNA D. SENCERBOX, Appellant, v. FIRST NATIONAL BANK OF IDAHO, Respondent.

[93 Pac. 369.]

Separate Property of Wife—Wife's Money Deposited in Bank—Management and Control of by Husband—Husband's Checks—Payment—Bank's Liability.

1. Under the provisions of sec. 2498, Rev. Stat., as they existed before amendment in 1903 (Sess. Laws 1903, p. 345), the husband had the management and control of the separate property of the wife during the continuance of the marriage, but could not sell or alienate any part of such property, nor encumber the same unless by an instrument in writing signed by the husband and wife and acknowledged as provided by law.

2. Under the provisions of subd. 3, sec. 14, Rev. Stat., money is declared to be personal property.

3. Under the provisions of sec. 2499, Rev. Stat., if the wife has just cause to apprehend that her husband has mismanaged or wasted or will mismanage or waste her separate property, she or some other person in her behalf may apply to the district court for the appointment of a trustee to take charge of and manage her separate property.

4. And until the wife avails herself of the provisions of said sec. 2499, the husband has the management and control of his wife's separate property.

5. The words, "management and control," as used in said section, have a well-defined meaning, and under the provisions of sec. 15, Rev. Stat., must be construed according to the context and approved usage of the language.

6. The power to manage implies the power to control. To manage money is to employ or invest it. The word "control" means to have authority over a particular matter or thing, and the phrase, "management and control," implies the possession of the thing managed or controlled, or the right to the possession thereof.

7. The rights of married women as to the management and control of their separate property and their power over it in this state, depend mainly upon the constitution and statutes of the state.

8. Under the provisions of said sec. 2498, Rev. Stat., prior to amendment, the husband was made the statutory agent to manage

and control the wife's separate property, and required no authority from her to constitute him such agent.

9. Under the provisions of said sec. 2498, Rev. Stat., money, which is the separate property of the wife, is placed in the same category as other personal property, and the husband is made the statutory agent for the management and control thereof, and he has the right to its possession, and under the provisions of said section, the husband was authorized to receive the separate estate of the wife for the purpose of its management and control, whether it consisted of money or other property.

10. The husband's receipt to a third party for the wife's separate property is a discharge to the person to whom it is given.

11. As to her money, the power of management and control gives him the right to its possession, to draw it out of the bank where it is deposited, to keep it safely or invest it, or redeposit it in another bank, and to check it out.

12. The husband being the statutory agent of the wife would have as much power over money deposited in the bank in her name as any other trustee would have over a like deposit of trust funds, and the bank would be under the same liability to pay out the money upon his check.

13. The plaintiff, by entering into the marriage relation with her husband under the law, made him her statutory agent for the management and control of her separate estate.

14. The husband's management and control of the separate property of the wife is not limited to the property out of her possession, but to all her separate property, whether in or out of her possession at the time the agency begins.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District from Ada County. Hon. Geo. H. Stewart, Judge.

Action to recover money deposited in the bank, it being the separate property of the wife. Judgment for defendant. *Affirmed.*

Hawley, Puckett & Hawley, for Appellant.

The agency of the husband for the wife in regard to her separate property is limited to acts for the benefit of the wife. (Platt on Married Women, sec. 18.)

The power to manage and control does not include the power to alienate, or deprive the wife of her title to her sep-

arate property; the wife must give her consent to any such alienation. (Rev. Stat., sec. 2498.)

"We think it quite apparent that the provisions of sec. 2498 were intended as an inhibition against any alienation or encumbrance of the separate property of the wife by the husband without the full and unrestrained consent of the wife." (*Bassett v. Beam,* 4 Ida. 106, 36 Pac. 501; *Dernham v. Rowley,* 4 Ida. 753, 44 Pac. 643; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399.)

Whenever the money is withdrawn from the bank, the wife's title to it is thereby alienated and destroyed without her consent in any way being given, and her deprivation of this separate property is something which was not intended by the legislature. She could not enjoy her money not in her possession.

To allow the husband to receive his wife's money without her knowledge and consent would be to allow him to alienate her property under the guise of managing and controlling it without her consent, a thing absolutely prohibited by sec. 2498, Rev. Stat. The object of the statute was to prevent the husband's disposition of the wife's separate property. The rule the defendant invokes here would allow it to deny its depositor's title. (*Bates v. First Nat. Bank,* 89 N. Y. 286-291.)

W. E. Borah, for Respondent.

"The husband, by express language of the statute, is entitled to the management and control of the separate property of the wife during the continuance of the marriage, and of course to its possession. If the wife has any just cause to apprehend that the husband will mismanage or waste her separate property, she has a remedy by application to the district court for the appointment of a trustee, etc." (*Mahone v. Grimshaw,* 20 Cal. 176; *Kays v. Phelan,* 19 Cal. 128; *MacLay v. Love,* 25 Cal. 367, 85 Am. Dec. 133.)

"The possession vests in the husband as her trustee that he may manage and control the estate, taking the returns and profits without liability to account." (*Evans v. English,* 61

Ala. 422; *Marks v. Cowles*, 53 Ala. 506; *Coleman v. First Nat. Bank*, 94 Tex. 605, 86 Am. St. Rep. 871, 63 S. W. 867.)

What does the statute mean when it says the management and control belongs to the husband? It does not say the management and control shall belong to the husband and wife, but belong to the husband alone, and if the bank had wanted to raise the question, not only had Mr. Sencerbox the right to draw out the money but he had the sole right to do so. Our supreme court has certainly held that our statute makes the husband the statutory agent· of the wife to· manage, control, possess and recover her property, and that she cannot even recover her separate property. He must do· so for her. (*McDonald v. Rozen*, 8 Ida. 353, 69 Pac. 125.) The mere fact of the withdrawing of the money from the bank does not change the title. When the money is withdrawn from the bank it is absolutely in the hands of the statutory custodian of the wife. No one has it or has any right to it other than the party whom the statute has designated shall manage and control it.

SULLIVAN, J.—This is an action to recover from the respondent the sum of $2,001.25. The plaintiff alleges that she deposited with the defendant bank at different times, from January 3, 1898, to May 26, 1902, the sum of $4,430.76; that she checked against the same until the deposit was reduced to. the sum of $2,001.25, and that upon presentation of a check for that amount, payment was refused. The defense is that the entire amount so deposited was checked out either by plaintiff herself or her husband, he issuing checks bearing the name of the plaintiff and signed by himself. However,. there were two checks signed by the husband alone. It is admitted that during the times mentioned in the complaint,. the plaintiff and one E. J. Sencerbox were husband and wife. The record clearly ·shows that the entire amount deposited was at different times paid out upon checks signed as above stated. The cause was tried by the court without a jury and judgment was entered in favor of the defendant. This appeal is from the judgment.

Several of the errors assigned may be considered together, as they raise but one question, and that is the authority of the husband, under the statute as it existed at the time this transaction took place, to control and manage the separate property of the wife. It appears from the record that the plaintiff was absent from the city much of the time during which said money was drawn out of the bank, and that her husband had charge of her property and made some sales thereof and deposited a large part of said sum of $4,430.76 with the defendant bank in the plaintiff's name, and that he thereafter drew checks against said money so deposited in his own favor or in favor of the plaintiff, and signed them either in the name of the plaintiff by himself or by himself alone. For some of the checks so drawn the defendant bank drew drafts in favor of the plaintiff which were transmitted to her by her husband. It is admitted that she received $940 in that way. The question presented for determination is whether, under the provisions of sec. 2498, Rev. Stat., and other sections of our statutes bearing upon the rights of husband and wife, the husband had the authority to check against said bank account as he did. That section is as follows:

"The husband has the management and control of the separate property of the wife, during the continuance of the marriage, but no sale or other alienation of any part of such property can be made, nor any lien or encumbrance created, thereon, unless by an instrument in writing, signed by the husband and wife, and acknowledged by her upon an examination, separate and apart from the husband, as upon a conveyance of real estate."

The provisions of that section were in force at the time this transaction occurred, but were repealed in 1903. (Sess. Laws 1903, p. 345.)

As said section of the statute stood before it was amended in 1903, there was no exception as to the classes of the wife's separate property that were placed under the management and control of the husband by the provisions of said section. The statute reads: "The husband has the management and

control of the separate property of the wife during the continuance of the marriage," etc., and under the provisions of sec. 2499, Rev. Stat., if the wife had just cause to apprehend that her husband had mismanaged or wasted or would mismanage or waste her separate property, she, or any other person in her behalf, might apply to the district court for the appointment of a trustee to take charge of and manage her separate property or estate. She was not authorized to take charge of. and manage her separate property under any conditions or facts, but if a just cause existed, she could deprive her husband of his statutory right thereto. If that was done, it passed into the hands of a trustee. So, until the wife availed herself of the provisions of said sec. 2499, the husband had the management and control of the separate property of his wife during the continuance of the marriage, but no sale or alienation of such property can be made, nor any lien or encumbrance created thereon unless by an instrument in writing signed by the husband and wife and acknowledged as provided by law. The words "management and control," as used in said section, are words of well-defined meaning. Those words have not acquired a peculiar and appropriate meaning or definition in and under the provisions of sec. 15, Rev. Stat. They must be construed according to the context and the approved usage of the language. Those words are of broad significance and meaning. The Century Dictionary defines the word "management" as "The act of managing by direction or regulation; conduct; administration; governing; direction; guidance; care; charge; superintendence." It defines the word "control" as meaning "Subject to authority; direct; regulate; govern; dominate; to have superior force and authority over." The Standard Dictionary defines "management" as "Carrying on; directing; conducting; superintendence; having the general management, conduct or direction of something; acting as responsible or executive head"; and defines "control" as "to exercise a directing, restraining or governing influence over; regulate; regulating power; restraining or directing influence." In *Sinking Fund v. Walker,* 6 How. (Miss.) 186,

38 Am. Dec. 433, in defining the word "management," the court said: "The power to manage implies the power to control. It allows the exercise of discretion. It could not be managed without the power to do so and by requiring the one, the other was conferred. To manage money is to employ or invest it. It requires no other management." In *Anderson v. Stockdale,* 62 Tex. 61, in defining the word "control," the court said: "To have authority over a particular matter; to check, to restrain, to govern with reference thereto." The words "management and control" are used quite often in our statutes, as where the corporate business of a company is under the control of a board of directors and an estate is under the management of an administrator, and in all such instances it appears that those words were intended to mean to govern, direct and manage, in the full sense of those terms. In *Bank of Monroe v. Gifford,* 79 Iowa, 300, 44 N. W. 558, it is held that the control of paper securities implies the possession thereof. See, also, Vol. 2, Words and Phrases Judicially Defined, under the word "Control"; also 5 Id., under the words "Management and Control."

It must be understood that the rights of married women as to the management and control of their separate property, and their power over it, in the state of Idaho, do not depend alone on the principles of the common law or upon the doctrines of the courts of equity, but mainly upon the constitution and statutes of the state. (See *MacLay v. Love,* 25 Cal. 368, 85 Am. Dec. 133.). Under the provisions of sec. 2498, the husband is made the statutory agent to manage and control the wife's separate property. Now, if money is the separate property of the wife under the statute, unless that is excepted from the management and control of the husband, he certainly has the right to reduce it to his possession and manage and control it. In the case at bar, the wife had deposited $794.95 in the defendant bank before her marriage. At the time of her marriage, some of her money was deposited in said bank; the husband thereafter made certain collections for her, sold some property and deposited the proceeds amounting to $3,635.95 in said bank in her name, and there-

after drew out of said bank by checks and sight draft $2,001.25 of the money so deposited, and it is that sum that is involved in this action. The question arises whether the husband under the statute giving him the management and control of his wife's separate property had the authority to check or draw said money out of the defendant bank. The question naturally arises whether the money, which is the separate property of the wife, is classed in the same category as other personal property belonging to the wife and placed by the provisions of said section 2498 under the management and control of the husband. If it is, to what extent may he go in reducing such cash to his possession? Certainly, under the provisions of said statute the husband might reduce to his possession livestock and other personal property, for if he is made the statutory agent of the wife to manage and control it, he certainly has the right to its possession. In 25 Ency. of Law, p. 427, it is stated: ''The statutes in some jurisdictions expressly provide that the husband shall have the right to manage and control the wife's separate property. This management includes the power to make collection of her debts, and to invest the money of her separate estate coming into his hands, in such manner as he may deem best''; and in *Evans v. English,* 61 Ala. 422, under a statute giving the management and control of the wife's property to the husband, it is held that ''The power and duty of the husband is to receive the separate estate of the wife, whether it consist of money, choses in action or other property, real or personal, and his receipt is a good discharge in law or equity to the persons surrendering it to him. This power he exercises solely, and not jointly or concurrently with the wife. The property thus received vests in him as trustee, and he has the right to manage and control the same. It is apparent that the title does not vest in the husband. That remains in the wife,'' etc.

The question arises under the law whether the wife can defeat the management and control of her separate property by the husband simply by placing her property in the possession of some third person. I think not, as the law provides

but one way for her to prevent her husband from managing and controlling her separate estate, and that is by following the provisions of said sec. 2499,—by having a trustee appointed.

In *Evans v. English, supra,* it is held that it is not only the power, but the duty, of the husband to receive the separate estate of the wife, whether it consists of money or other property; how can the husband have the management and control of personal property without the right to its possession? And in that case it is held that "the possession vests in the husband while the title remains in the wife."

In *Marks v. Cowles,* 53 Ala. 506, it is held: "The power of the husband is to receive the property of the wife, a power he is not required to exercise concurrently with the wife. His receipt, therefore, is a full discharge in law and in equity to the person to whom it is given. His duty is to manage and control the property," etc.

In *Coleman v. First Nat. Bank,* 94 Tex. 605, 86 Am. St. Rep. 871, 63 S. W. 867, which is a case very much like the one at bar, after stating that that court was able to find but little authority upon the question of the management of the wife's separate property by the husband, and that it was largely a matter of statutory regulation, and referring to the statutes, the court said: "But it (the statute) does imply that he may put it to its appropriate use so that it shall produce an income. As to her money, the power of management gives him the right to its possession to keep it safely, and hence to deposit it in the bank and to draw it out. Such being the authority of the husband under the law, he being the statutory agent for the management of her separate property and funds, he would have at least as much power over money deposited in the bank even in her name as any other trustee would have over a like deposit of trust funds, and the bank would be under the same liability to pay out the money upon his check."

The court then refers to trustees and trust funds, as follows: "If such be the rule as to ordinary agents and trustees, it certainly is the rule in this state as to the husband

relative to the wife's separate funds, of which, under our law, he has the sole management. If the money had been deposited by the wife before her marriage and the fund had remained in the custody of the bank after that event, it would seem that he as sole manager of her separate estate, and he alone, would have the right to withdraw it. . . . . . The plaintiff by entering into the marriage relation with her husband made him the sole agent for the management of her separate estate.'' That case was decided by the supreme court of Texas, January 26, 1901. In that case the court of civil appeals of Texas stated: "It was not contended by the bank that it paid out the money on the checks of Coleman on the ground that Coleman stated to its officers at the time he deposited the same that it was understood that it was to be checked out by him. The husband had the right to check out money.'' (64 S. W. 933.) In the same case, *Coleman v. Bank*, 17 Tex. Civ. App. 132, 43 S. W. 938, on the original hearing of the case, the matter was fully discussed, and the court said, among other things:

"She alleges that she was accessible to the bank, and seems to have assumed that it was the duty of the agent of the bank to hunt her up and keep her informed as to the condition of her account. In this she was mistaken.''

Under the laws of banking, a general deposit of money in a bank creates the relation of debtor and creditor. The bank is the debtor and the depositor is the creditor. In the case at bar, the wife was the creditor and the bank was her debtor.

Under the provisions of said sec. 2498, the husband is made the statutory agent of the wife, and has the management and control of her separate estate during the continuance of the the marriage, unless he is deposed or deprived of his agency, as provided by the provisions of sec. 2499; then her separate property passes into the hands of a trustee appointed by the court, but not into her management and control. Until his agency is thus terminated, the husband has full authority to collect debts due his wife and to give full and sufficient receipts or acquittances therefor, and the debtor is as fully protected by such acquittances as if given by the wife her-

self. The bank debtor stands on the same footing as other debtors. No rational distinction can be drawn between them. Under the following headnote, to wit, "Upon whose checks the bank shall pay," it is stated at sec. 432 in 2 Morse on Banks and Banking, as follows:

"The indebtedness of the bank upon a deposit is discharged *pro tanto* by its payments made upon any order, check, or draft signed by any person who would have the power to demand and receive the deposit, regarded as a simple debt, and to give full and sufficient acquittance for it." That, I think, is the correct rule, and if a *feme sole* had made a loan to an individual, payable on demand, or had deposited money with a person subject to her order, and before she demands payment she marries, the husband would, under the provisions of said sec. 2498, have full authority to demand and collect such deposit or loan and give a full acquittance therefor. A bank being the debtor, in no manner changes the rule. As stated in the last authority cited, the bank is discharged *pro tanto* upon payment of a deposit, on the check of any person who had the right to demand and receive the money so deposited regarded as a simple debt. The money becomes no more sacred from its deposit in a bank and therefore excluded from the possession of a statutory agent, than money deposited with a friend or with a shopkeeper.

If the legislature had intended to except the management and control of the wife's money, which was her separate property, from the provisions of sec. 2498, Rev. Stat., appropriate language would have been used for that purpose, but we find no exception whatever. If the husband had the management and control of the wife's separate money, the wife could not control it by putting it in the bank or by delivering it to a friend to be kept for her.

The statute does not provide that the management and control of the separate property of the wife shall belong to both the husband and wife, but it declares that it belongs to the husband alone. However unwise we may think the provisions of said section, the court ought not to repeal or set them

aside by construction by holding that the provisions of said section apply to all of the wife's property except her money.

It appears from the record that at least $940 of the money so drawn on check out of the bank was sent to the plaintiff by the husband. If he had the right to draw it, as we hold he did, the bank is not required to inquire into the purpose to which he applied said money. (1 Moore on Banks and Banking, sec. 317.) Of course, a bank would not be justified in receiving trust money from a trustee in payment of a personal debt of the trustee due the bank.

From the foregoing, we conclude that the judgment must be affirmed, and it is so ordered. Costs are awarded to the respondent.

Stewart, J., concurs.

AILSHIE, C. J., Dissenting.—I dissent from the views expressed by the majority of the court and the conclusion reached thereon. It seems to me that the error into which my associates have fallen arises out of a misconstruction and application of the words "management and control." It is difficult for me to understand how in the reasonable and ordinary use of those terms any such meaning can be gathered as given to them in the majority opinion. It is a common maxim that things which cannot be lawfully done directly cannot be lawfully done by indirection and circumvention. The statute gives a married woman a separate property, and while it confers upon the husband the right of management and control thereof, it does not allow him to alienate or convert the same.

In this case the wife preferred to have a deposit and credit at the bank to having the money itself. When the bank allowed the husband to exhaust that credit without her consent and to convert the property right she had in such general deposit into another form, class and character of property, it was clearly acting without any sanction of law or right and contrary to every principle of banking. The assumption that the husband has a right to convert any article, class or character of the wife's separate property into some

other character or kind of property is directly contrary to sec. 2498 prior to its repeal. On the contrary, that section expressly prohibited the husband from making any "sale or *other* alienation of *any part* of such property," without the wife's assent and concurrence. "Management and control" as used in the statute is not synonymous with "convert and dispose of" as the majority opinion seems to indicate. If a wife owned a sewing-machine or a cow, the husband was entitled to "manage and control" the same, but he never has in this state had authority to convert the machine or cow into a horse or buggy or any other class of property, or any other article or piece of the same kind of property, because to "manage and control property" does not have any such meaning or significance. It is clear to me that the majority opinion contains a construction contrary to the statute and legislative intent. It is scarcely in keeping with the statute to apply the law of agency to a case of this kind. The husband is in no instance or respect authorized to act in the name of the wife or sign her name for any purpose or in any transaction. Since sections 2498 and 2499 have been repealed and supplemented by the act of March 9, 1903 (Sess. Laws 1903, p. 345; *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497), this question is not likely to again arise in this state, and for that reason I refrain from any further expression thereon.