(No. 7057. February 13, 1943.)

JOSEPH ABBL and MARIE ABBL, husband and wife, Respondents, v. E. G. MORRISON and OLIVE MORRISON, husband and wife, Appellants.

[134 Pac. (2d) 94.]

Rayborn & Rayborn for appellants.
Wilson & Sheneberger for respondents.

AILSHIE, J.—This action was commenced in the Probate Court of Twin Falls County, under the forcible entry and unlawful detainer statute (Title 9, chap. 3, I. C. A.), to recover the possession of certain leased agricultural lands. Defendants answered and admitted the material allegations of the complaint and set up a separate defense, claiming right to continue possession. The case was tried and resulted in a verdict in favor of the defendants; and plaintiffs appealed to the District Court, for Twin Falls County. Judgment was entered in the District Court in favor of the plaintiffs on the pleadings; this appeal is from the latter judgment.

This appeal seems to present only one major question for our decision, namely: Is an oral lease of community real property for a term less than one year valid? Our answer to this question must necessarily turn upon the terms of the statute and our previous decisions thereunder.

Sec. 31-903, I. C. A., defines the separate property of the wife as follows:

"All property of the wife owned by her before marriage, and that acquired afterward by gift, bequest, devise or descent, or that which she shall acquire with the proceeds of her separate property, shall remain her sole and separate property, to the same extent and with the same effect, as the property of a husband similarly acquired."

Sec. 31-904, I. C. A., provides for the management and control of the wife's separate property and is as follows:

"During the continuance of the marriage, the wife has the management, control and absolute power of disposition of her separate property, and may bargain, sell and convey her real and personal property, and may enter into any contract with reference to the same, in the same manner, and to the same extent, and with like effect, as a married man may in relation to his real and personal property: provided, that the husband shall be bound by such contracts to no greater extent or effect than his wife under similar circumstances would be bound by his contracts."

It will be observed from the foregoing statute, that the wife "may bargain, sell and convey her real and personal property," at her own pleasure and without the consent of the husband.

Sec. 31-906, I. C. A., defines the separate property of the husband as follows: "All property owned by the husband before marriage, and that acquired by gift, bequest, devise or descent is his separate property." (Repealed by 1941 Sess. Laws, chap. 62, sec. 2, page 123, and substance incorporated in sec. 31-903, as amended by same Act.)

Sec. 31-907 defines community property as follows:

"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, unless by the instrument by which any such property is acquired by the wife it is provided that the rents and profits thereof be applied to her sole and separate use; in which case the management and disposal of such rents and profits belong to the wife, and they are not liable for the debts of the husband."

Sec. 31-913 provides for the "management and control of the community property" and is as follows:

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her

separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered."

It will be noted, from the last section quoted, that the husband "can not sell, convey or encumber the community real estate" without the wife, *joining* him *"in executing and acknowledging the deed or other instrument of conveyance."*

This statute contemplates that "a deed or other instrument of conveyance" must necessarily be in writing, since it requires acknowledgment by both husband and wife. An acknowledgment must be *certified in writing* on the instrument acknowledged. (Secs. 54-707, 54-708, 54-709, I. C. A.) Sec. 54-813 defines the term "conveyance" as embracing "every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered," etc. (See *John Hancock Mut. Life Ins. Co. v. Girard,* 57 Ida. 198, at 215, 217, 64 P. (2d) 254.)

We now turn to Secs. 16-503, 16-504, and 16-505, for the purpose of ascertaining just what agreements and contracts must be in writing and we find, inter alia, the following:

Sec. 16-503, specifically authorizes making a lease of real property for a term *"not exceeding one year, . . . otherwise than by . . . a conveyance or other instrument in writing, subscribed by the party creating . . . the same."* (Italics supplied.)

Sec. 16-505 provides:

"In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence therefore, of the agreement can not be received without the writing or secondary evidence of its contents:

"1. An agreement that by its terms is not to be performed within a year from the making thereof.

\* \* \*

"5. An agreement for the leasing, for a longer period than one year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the

authority of the agent be in writing, subscribed by the party sought to be charged."

These sections clearly contemplate and authorize the oral leasing of real property for a period *not exceeding one year*. Under the almost universal rule of construction, we are bound to assume that, when the legislature provided by Sec. 31-913, supra, that the wife must join the husband in *executing and acknowledging* every "deed or other conveyance by which the title of real estate is sold, conveyed or encumbered", it had in mind the fact, that a lease for a term not exceeding one year need not be in writing; and consequently they did not intend to require the joinder of the wife with the husband in "executing and acknowledging" an instrument not required to be in writing, since they had already provided, by Secs. 16-503 and 16-505, that a lease for a period not exceeding one year might be *oral*.

Having authorized making an oral lease for not more than a year, it would seem to logically follow, that the legislature did not intend to include *such leases* within the category of *"deed or other instrument of conveyance"*, specified in Sec. 31-913, as having to be *executed and acknowledged*. Moreover, whether a lease be oral or in writing, and whether it be for a year or a term of years, nevertheless, under the provisions of Sec. 9-303, I. C. A., if on agricultural lands, as here, it may be renewed by operation of statute and without any writing or acknowledgment.

It is safe to say that the great majority of real property tenancies in this state are contracted for terms of less than a year's duration; and we are convinced that it was never the intention of the legislature, to so handicap and complicate the making of such contracts as would in many cases defeat the beneficial results of successful "management and control" of community property.

These community property statutes are intended to *protect* rather than *defeat* the interests of the wife in the marital acquisitions; but it would prove a great handicap, and loss in most cases, to require both husband and wife to join in signing and acknowledging a written lease every time they want to make a thirty-day lease or for any term not exceeding a year. The prospective tenant would often be gone before the lease could be completed.

By the provisions of Sec. 2498 of the Rev. Statutes of 1887, (repealed by 1903 Sess. Laws, sec. 5, p. 346) the

husband was given "the management and control of the separate property of the wife during the continuation of the marriage", etc. Under that statute, this court held in *Sencerbox v. First National Bank,* 14 Ida. 95, 93 P. 369, as follows:

"The power to manage implies the power to control. To manage money is to employ or invest it. The word 'control' means to have authority over a particular matter or thing, and the phrase, 'management and control,' implies the possession of the thing managed or controlled, or the right to the possession thereof.

\* \* \*

"Under the provisions of said Sec. 2498, Rev. Stat., money, which is the separate property of the wife, is placed in the same category as other personal property, and the husband is made the statutory agent for the management and control thereof, and he has the right to its possession, and under the provisions of said section, the husband was authorized to receive the separate estate of the wife for the purpose of its management and control, whether it consisted of money or other property.

*"The husband's receipt to a third party for the wife's separate property is a discharge to the person to whom it is given."* (Italics supplied.)

In considering and construing these several statutes relating to community property, it must be "borne in mind that all our legislation with reference to contracts, powers and liabilities of married women must be viewed and construed as grants instead of restriction of power and authority to contract." (*Bank of Commerce, Ltd., v Baldwin,* 12 Ida. 202, 209, 85 P. 497.) The reason for this, as stated in the Baldwin case, is that, at common law (and under Sec. 2498, Rev. Stat. of 1887), the wife had no power to contract in relation to either her separate property or community property; whereas, the husband had the sole power of management, control and disposition of such property. (See, *Levy v. Kalabich,* 35 N. M. 282, 295 P. 296, for parity of reasoning). New Mexico has a statute identical with ours, in relation to the "management and control" of community property; and the Supreme Court of that state, in the case last above cited, held the "wife not necessary party defendant in suit to foreclose mechanic's lien on community property."

The statute *does not prohibit* the husband making an oral lease for a lesser period than one year; nor does it require the wife to join in the husband's oral leasing of community property for a *less period* of time. It therefore seems clear that the joinder of husband and wife in leases for periods less than a year is not required or contemplated by the provisions of Sec. 31-913, supra.

Respondent further urges that "It is the settled law of this state that a lease of real property is a conveyance or encumbrance", and in support thereof cites *Fargo v. Bennett,* 35 Ida. 359, 206 P. 692. In that case this court held that a "lease of community property *for a term of years* is a conveyance and an encumbrance"; (italics supplied) and where it involves the community property, requires the signature of the wife. The holding in that case is the established law of the state. (See *McKinney v. Merritt,* 35 Ida. 600, 604, 208 P. 244 (option contract for term of 1 year, 1 month) ; *Hart v. Turner,* 39 Ida. 50, 56, 226 P. 282 (written contract, suit for performance) ; *Blaine County Natl. Bank v. Timmerman,* 42 Ida. 338, 347, 245 P. 389 (agreement, term of 3 years) ; *Elliott v. Craig,* 45 Ida. 15, 21, 260 P. 433 (1 year, 1 month) ; *Burnham v. Henderson,* 47 Ida. 687, 690, 278 P. 221 (3-year term) ; *Intermountain Realty Co. v. Allen,* 60 Ida. 228, 231, 90 P. (2d) 704, 122 A. L. R. 652, note (five-year term) ; *Little v. Bergdahl Oil Co.,* 60 Ida. 662, 670, 95 P. (2d) 833 (18 months term).

It must be observed, however, that, in the Fargo case, the court was dealing with a written, purported *five-year* lease of community property; and the court considered a lease, *"for a term of years."* The same language, "term of years", was used in *Little v. Bergdahl Oil Co.,* supra, and *Intermountain Realty Co. v. Allen,* supra.

The lease here involved is for a term less than one year. No case from this court has been called to our attention where this question was raised with reference to an *oral* lease for a period of *less than one year.*

In the case of *Intermountain Realty Co. v. Allen,* supra, the assignment of a five-year lease was involved and we held that it constituted an interest in real estate, designated as a "lease for years." In *Little v. Bergdahl Oil Co.,* supra, the Fargo and other cases were reviewed; and consideration of the requirements of the statute, with reference to joinder of husband and wife in executing and acknowledging deeds

and other instruments affecting the title to real property, dealt with such instruments as extended for a "term of years" and did not relate to oral leases for a term less than a year.

The construction we place on these statutes is practical in its operation. No one would be so bold as to assert that the husband can not farm and cultivate the community property and employ workmen to assist him in doing so; and that he may not harvest and market his crops, collect the value thereof and spend it, without the wife joining him in relation thereto. If he may do so himself or by the aid of his employees, why may he not do so through the means of a crop-year tenant? It would not only be inconvenient, but wholly impractical, to require the husband and wife to execute and acknowledge a written lease every time they wanted to lease or let a town lot or vacant building for a month, or let the community farm, for growing of annual crops. There would be very little to do in the "management and control" of community real property if respondents' contention prevailed.

We conclude that a lease of community real estate for a period not exceeding one year is not such an *encumbrance* as is required by Sec. 31-913, I. C. A., to be in writing *executed and acknowledged* by both husband and wife.

If our decision in this case rested alone on the question just discussed, the judgment would have to be reversed; but our conclusion on that question renders it necessary to consider a further issue which arises out of the conclusions already reached.

The defendants admitted all the material allegations of the complaint, including the allegation that,

"on the thirteenth day of December, 1941, the said defendants were served with a notice in writing signed by the plaintiffs requiring said defendants to quit said premises and surrender up possession of the same within five days after the receipt by them of said notice."

Defendants then set up a separate affirmative defense consisting of two paragraphs reading as follows:

## "VI.

"That as a further answer and as an affirmative defense, these defendants state that they are legally in possession of said premises under and by virtue of a lease entered into between the plaintiffs and defendants.

## "VII.

"Defendants further state that they have continued to remain in possession of the premises under the terms of said lease and did considerable work in the way of cultivating and sowing crops on said land in the fall of 1941 and are farming said land for the crop season of 1942 and that all of the above described work done on the said premises, by said defendants [was] with the knowledge and consent of the plaintiffs, and that said defendants have done said work in part performance of said lease, and that plaintiffs are thereby estopped from denying defendant's right of possession. Wherefore having fully answered, defendants pray that plaintiffs take nothing and that defendants have and recover their costs."

The trial court sustained a motion to strike these two paragraphs and also sustained a demurrer to the answer. Appellants in their brief state their version of the issues as presented by the pleadings and record as follows:

"The appellants by their answer admit that respondents are the owners of the real estate described in respondents' complaint; admit that on March 8th, 1940, appellants became tenants of said premises for a term beginning March 8th, 1940, and ending November 1st, 1940; admit that appellants were served with notice as set out in respondents complaint, but specifically deny that they are willfully and wrongfully withholding possession from respondents.

"In the way of further answer and as an affirmative defense, appellants complaint alleges that appellants entered into a written lease for the crop season of 1940 and held over under the terms of said lease and farmed said premises by verbal agreement for the season of 1941; and also allege that they again entered into a verbal agreement with the respondents to farm said premises for 1942, and acting upon said agreement did considerable fall plowing and sowed fall grain, with the full knowledge and consent of respondents."

It is admitted that the lands involved are "agricultural lands", within the meaning of Sec. 9-303, supra; and that the first lease expired November 1, 1940, and the extension or renewal thereof for one year terminated November 1, 1941. It is also admitted that the respondents served written notice on appellants to quit December 13, 1941. This

was clearly within the 60-day period succeeding the termination (November 1st) of the 1941 lease. The allegation that appellants "continued to remain in possession of the premises under the terms of said lease and did considerable work in the way of cultivating and sowing crops on said land in the fall of 1941 . . . with the knowledge and consent of plaintiffs," is not sufficient to allege a lease, either oral or in writing, especially in the face of written statutory notice to quit, and consequently fails to state grounds constituting an affirmative defense.

Our conclusion reached on the issue last discussed herein renders it necessary to affirm the judgment of the trial court.

Affirmed. Costs to respondents.

Holden, C.J., concurs.

Givens, J., concurs in conclusion reached.

Budge and Dunlap, JJ., concur on the grounds stated in reference to the insufficiency of the separate affirmative defense, set up by paragraphs VI and VII.